**LaMONICA HERBST & MANISCALCO, LLP**      Hearing Date: Tuesday, August 28, 2018 at 10:00 a.m.
3305 Jerusalem Avenue, Suite 201     Objection Deadline: Tuesday, August 21, 2018 by 5:00 p.m.
Wantagh, New York 11793
Telephone: 516.826.6500
Jacqulyn S. Loftin, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
In re:

INTERVIEM, INC., *et al*.,           Chapter 7
                                                                Case No.: 18-11514 (MKV)
                                                                (jointly administered)
                               Debtors.
-------------------------------------------------------------------------x

**NOTICE OF HEARING ON THE MOTION OF CHAPTER 7 TRUSTEE FOR THE ENTRY OF AN ORDER: (I) APPROVING THE ASSET PURCHASE AGREEMENT BY AND BETWEEN THE CHAPTER 7 TRUSTEE AND SINGLETON, LLC; (II) APPROVING THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES, SECURITY INTERESTS AND OTHER INTERESTS; AND (III) <u>GRANTING RELATED RELIEF</u>**

      **PLEASE TAKE NOTICE,** that on **August 28, 2018 at 10:00 a.m.**, or as soon thereafter as counsel may be heard, a hearing shall be held at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004 (the "<u>Bankruptcy Court</u>") before the Honorable Mary Kay Vyskocil, United States Bankruptcy Judge on the motion (the "<u>Motion</u>") of Salvatore LaMonica, solely in his capacity as the Chapter 7 Trustee and not as an individual (the "<u>Trustee</u>"), of the jointly administered estates of Interview, Inc., Brant Publications, Inc. and BMP Media Holdings, LLC (collectively, the "<u>Debtors</u>"), by his counsel, LaMonica Herbst & Maniscalco, LLP, seeking the entry of an Order: (i) approving the terms of the Asset Purchase Agreement by and between the Trustee, on behalf of the Debtors' estates, and the purchaser, Singleton, LLC, for the sale of the Debtors' assets (as defined in the Motion), a copy of the Agreement is annexed to the Motion as **Exhibit "A"**; (ii) approving the sale of the Debtors' Assets (as defined in the Motion), free and clear of all liens, claims and encumbrances, security interests and other interests, to the successful bidder at the in accordance with the terms of the Agreement; (iii) affording the successful purchaser Bankruptcy Code § 363(m)

1

protections; and (iv) approving and granting such other, further and different relief as this Court deems just and proper

**PLEASE TAKE FURTHER NOTICE**, that objections to the relief requested in the Motion, if any, must be in writing, conform with the Title 11 of the United States Code, the Bankruptcy Rules and the Local Rules, and be filed with the Bankruptcy Court, with a courtesy copy to the Chambers of the Honorable Mary Kay Vyskocil, United States Bankruptcy Judge, and served upon, so as to be received by, LaMonica Herbst & Maniscalco, LLP, the attorneys for the Trustee, Attn: Jacqulyn S. Loftin, Esq., no later than **August 21, 2018 by 5:00 p.m.** as follows: (a) through the Bankruptcy Court's electronic filing system, which may be accessed through the internet at the Court's website at www.nysb.uscourts.gov, in portable document format (PDF) using Adobe Exchange Software for conversion; or (b) if a party is unavailable to file electronically, such party shall submit the objection in PDF format on a compact disc in an envelope with the case name, case number, type and title of document, document number to which the objection refers and the file name on the outside of the envelope.

**PLEASE TAKE FURTHER NOTICE**, that the hearing on the Motion may be adjourned from time to time without any other announcement other than that set forth in open Bankruptcy Court.

Dated: August 2, 2018
      Wantagh, New York

                                  **LAMONICA HERBST & MANISCALCO, LLP**
                                  Counsel to the Chapter 7 Trustee

By:   *s/ Jacqulyn S. Loftin*
        Jacqulyn S. Loftin
        Partner
        3305 Jerusalem Avenue, Suite 201
        Wantagh, New York 11793
        Telephone: 516.826.6500

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
In re:

INTERVIEW, INC., *et al.*,

                           Debtors.

------------------------------------------------------------------------x

        Chapter 7
        Case No.: 18-11514 (MKV)
        (jointly administered)

**MOTION OF CHAPTER 7 TRUSTEE FOR THE ENTRY OF AN ORDER: (I) APPROVING THE ASSET PURCHASE AGREEMENT BY AND BETWEEN THE CHAPTER 7 TRUSTEE AND SINGLETON, LLC; (II) APPROVING THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES, SECURITY INTERESTS AND OTHER INTERESTS; AND (III) GRANTING RELATED RELIEF**

**TO**    **THE HONORABLE MARY KAY VYSKOCIL**
        **STATES BANKRUPTCY COURT**
        **SOUTHERN DISTRICT OF NEW YORK**

Salvatore LaMonica, solely in his capacity as the Chapter 7 Trustee and not as an individual (the "Trustee"), of the jointly administered estates of Interview, Inc. ("Interview"), Brant Publications, Inc. ("Brant Publications") and BMP Media Holdings, LLC ("BMP", along with Interview and Brant are collectively referred to as the "Debtors"), by his counsel, LaMonica Herbst & Maniscalco, LLP, submits this motion (the "Motion")[1] seeking the entry of an Order: (i) approving the terms of the Asset Purchase Agreement (the "Agreement") by and between the Trustee, on behalf of the Debtors' estates, and the purchaser, Singleton, LLC (the "Purchaser" or "Singleton") for the sale of the Debtors' assets (as defined below), a copy of the Agreement is annexed as **Exhibit "A"**; (ii) approving the sale (the "Sale") of Debtors' Assets (as defined below), free and clear of all liens, claims and encumbrances, security interests and other interests (collectively, the "Liens"), to the successful bidder at the in accordance with the terms of the

---

[1] Capitalized terms not otherwise defined herein shall have the definition ascribed to the in the Asset Purchase Agreement.

3

Agreement; (iii) ) affording the successful purchaser Bankruptcy Code § 363(m) protections; and (iv) approving and granting such other, further and different relief as this Court deems just and proper, and respectfully states as follows:

**PRELIMINARY STATEMENT**

1. This Motion represents a critical step in the orderly liquidation of the assets of the Debtors' estates. By this Motion, the Trustee seeks authorization to proceed with Sale of the Assets in accordance with the Agreement, Local Bankruptcy Rule 6004-1 and General Order M-383 dated November 18, 2009 adopting the Amended Guidelines for the Conduct of Asset Sales (the "M-383 Order").

2. The Trustee seeks the Court's approval of the sale of the Debtors' Assets for a cash sum of $1,500,000 (plus all applicable taxes) or such higher or better offer received at the Auction scheduled to take place on Monday, August 27, 2018. Singleton will have the option to submit a higher or better bid at the Auction, and in the event the Purchaser's higher or better bid is accepted by the Trustee, the Agreement will be amended to adjust the Purchase Price. The Trustee was also able to secure a carve-out in the sum of $500,000 from the gross sales proceeds, plus the Trustee's commission based upon the gross proceeds, for the benefit of allowed claimants.[2]

3. The Trustee intends to market the sale of the Assets in various publications, including the New York Times, National Business section and The Wall Street Journal, National Edition and will also send the Notice of Sale (annexed as Exhibit "B") to all creditors and any potential bidders putting all parties on notice of the upcoming Auction. Lastly, the Trustee will set

---

[2] The carve-out to the Debtors' estates is subject to the terms of the settlement agreement by and between the Trustee and Singleton. The Trustee will file a motion seeking approval of such settlement contemporaneously herewith.

up a virtual data room with financial information about the Assets being sold for all potential bidders to perform their due diligence.

4. The Trustee proceeded with this single-step process of seeking Court approval of the Agreement and to confirm the results of the Auction at one hearing because of the exigent circumstances surrounding the Sale. Specifically, Singleton required the closing on the sale of the Assets occur on or before August 31, 2018 because they believe the Interview trademark will be severely damaged if a September issue is not published, and it intends to start a new magazine that will publish its first issue in September. Therefore, the closing must occur immediately following the confirmation of the Sale.

5. The Trustee believes the sale of the Assets within the requested timeframe will serve the best interests of the Debtors' estates.

6. For these and the reasons set forth below, the Trustee respectfully requests that the Court approve the relief sought herein.

## JURISDICTION AND VENUE

7. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

8. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

9. The statutory predicates for the relief sought herein include 11 U.S.C. §§ 105, 363, 364 and 506 (the "Bankruptcy Code"), Rules 2002 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Bankruptcy Rule 6004-1.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Procedural History of the Debtors' Bankruptcy Cases

10. On May 21, 2018 ("Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court, Southern District of New York (the "Court").

11. Salvatore LaMonica was appointed as the interim Chapter 7 Trustee of the Debtors' estates and was subsequently duly qualified as the permanent Trustee of these estates.

12. Pursuant to an Order entered by the Court on July 18, 2018, these Debtors' estates are being jointly administered under Interview, Inc. [Case no. 18-11514-MVK].

### B. The Estates' Assets

13. Brant Publications has a 100% membership interest in BMP and Interview is an indirect wholly-owned subsidiary of Brant Publications. Interview was an American "pop culture" magazine that was founded in late 1969 by artist Andy Warhol and a journalist by the name of Jon Wilcock. The magazine featured one-on-one conversations and interviews between celebrities, artists, musicians and other creative thinkers.

14. The Debtors' primary assets, which the Purchaser seeks to buy under the terms of the Agreement, consist of the "Interview Magazine" trademark and logos, and other intellectual property, including, the Interview social channels and accounts on Instagram, Facetime and Twitter. The Purchaser is also buying the business and subscriber list, as well as the Interview Magazine archives that are stored and maintained at a warehouse facility in New Jersey. Singleton is purchasing the Interview archives and will take over the contract with the Warehouse where the archives are stored.

15. The Debtors' offices were located at 110 Greene Street, New York, New York. As part of the Sale, the Purchaser is buying the office equipment and computers belonging to Interview located within the office.

16. These Assets are listed on Schedule "A" of the Agreement and are defined as the "Assets" therein.

C. **The Asset Purchase Agreement**

17. After an extensive analysis of the Debtors' financial records, the Parties engaged in negotiations to sell the Debtors' Assets. Singleton's offer is the highest offer received for the purchase of the Debtors' Assets to date. The parties then negotiated the terms of the Agreement, the salient terms are set forth herein, but all parties are directed to Exhibit "A" for the full terms of the Agreement.

18. Under the terms of the Agreement, the Trustee has agreed to sell, and Singleton has agreed to purchase, the Assets (defined in Section B of this Motion) for the Purchase Price of $1,500,000, or such other amount equal to the winning bid if the Purchaser is the winning bidder at the Auction. The Purchase has agreed to pay a deposit of $75,000 within five business days of the execution of the Agreement that will be held in a separate segregated Trustee account with the balance of $1,425,000, plus any applicable sale or transfer taxes, to be paid at the Closing Date (defined below). Significantly, the Purchaser has not requested either a break-up fee or any bid protections.

19. The Sale is subject to higher or better offers. Therefore, in the event a Competing Offer is received at the Auction that is higher or better than the Purchase Price, the Purchaser will have the option to submit a higher or better bid. In the event the Purchaser's higher or better bid

7

is accepted by the Trustee, the Agreement will be amended to adjust the Purchase Price accordingly.

20. Most importantly, the Closing Date under the Agreement is on or before <u>August 31, 2018</u> (or such other date as may be authorized by the Court). It is critical that the Sale close immediately after Court approval since the Purchaser is in the process of launching a new magazine and intends to publish its first issue in September. To accomplish this, the Parties must close the Sale and the Assets transferred to the Purchaser so that it is able to circulate the September 2018 issue. The Purchaser's willingness to proceed with the Agreement was contingent on the August 31, 2018 Closing Date.

21. Indeed, the expedited Closing Date is the reason why the Trustee did not seek Court approval of the Sale procedures in a two-step process. Instead, the Trustee scheduled the Auction for Monday, August 27, 2018 with the hearing confirming the Sale of the Assets scheduled for Tuesday, August 28, 2018 in the hope that immediately following the sale confirmation hearing, the Trustee can close on the Sale by August 31, 2018.

## REQUESTED AND BASIS FOR RELIEF REQUESTED

**I.    The Sale of the Debtors' Assets as Set Forth in the Agreement Represents a Reasonable Exercise of the Trustee's Business Judgment and Should Be Approved**

22. Bankruptcy Code § 363 provides, in relevant part, that "[t]he trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . .". 11 U.S.C. § 363(b)(1). The terms of such sale are generally within the sound discretion of the debtor, or if applicable the trustee. <u>See</u> <u>Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)</u>, 722 F.2d 1063, 1071 (2d Cir. 1983); <u>see also</u> <u>Official Comm. of Unsecured Creditors of LTV Aerospace & Defense Co. v. LTV Corp. (In re Chateaugay Corp.)</u>, 973 F.2d 141, 145 (2d Cir. 1993); <u>In re Dial-A-Mattress Operating Corp.</u>, 2009 Bankr. LEXIS

1801, at *12 (Bankr. E.D.N.Y. June 24, 2009) ("The business judgment test is the standard for Section 363 sales in this Circuit." (citations omitted)); In re Hirsch, 360 B.R. 43, 45–46, 48, 50 (Bankr. E.D.N.Y. 2007) (requiring "existence of 'a good business reason to grant such an application'" (quoting In re Lionel Corp., 722 F.2d at 1071)); In re Thomson McKinnon Sec., Inc., 120 B.R. 301, 307–08 (Bankr. S.D.N.Y. 1990). As recognized by the United States Court of Appeals for the Second Circuit in Lionel Corp., a court may approve a § 363 application after expressly determining from the evidence presented that a good business reason exists to grant such application. 722 F.2d 1063.

23.    In addition, Bankruptcy Code § 105(a) grants the Court the authority to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). This provision is "the basis for a broad exercise of power [by the Court] in the administration of a bankruptcy case." 2 COLLIER ON BANKRUPTCY ¶ 105.01 (Alan N. Resnick and Henry J. Sommer. eds., 16th ed.).

24.    In accordance with Bankruptcy Rule 6004(f)(1), sales of property outside of the ordinary course of business may be by private sale or by public sale. In practice, the preferred method is to conduct a public sale because a public sale will most often result in a greater number of potential bidders in the shortest amount of time. That is, in order to determine that a private sale has yielded the highest or best offer, property generally must remain on the market for a significantly longer period of time than when offered at a public sale.

25.    Local Rule 6004-1(a) further provides that:

> The trustee may sell property of the estate that the trustee reasonably believes has an aggregate gross value of no more than $10,000 by public or private sale on seven days' written notice to any party with an interest in such property, the landlord of the premises on which the property is located, and such other parties as the Court may direct. The notice of any proposed sale of property of the estate having an aggregate gross value of at least $2,500 shall include the time and place of the

proposed sale, whether the sale will be public or private, and the terms and conditions of the proposed sale.

26. The M-383 Order supplements the requirements of Bankruptcy Code § 363, Bankruptcy Rule 6004 and Local Rule 6004-1 and provided, in pertinent part, that:

> When multiple asset sales over time are expected, a [trustee] should consider seeking Court approval of global bidding procedures to avoid the need to obtain Court approval of procedures for each such sale. Similarly, the [trustee] should consider seeking Court approval of global notice and other appropriate procedures to facilitate sales of assets of limited value or *de minimis* sales that do not warrant an auction or a separate motion for each sale. What constitutes a *de minimis* sale will depend on the facts of each case.

See Local Rule 6004-1.

27. Here, the Trustee determined, in his sound business judgment, that selling the Debtors' Assets outside the ordinary course of business at Auction is justified, necessary and appropriate. Indeed, compelling business justifications exist for the approval of the proposed Sale of the Assets as set forth herein. Moreover, the Trustee is a Chapter 7 Trustee and as such his role is to liquidate the estates' assets in a rapid manner and to maximize their value. That is what the Trustee seeks to do in these estates.

28. The Trustee, with the assistance of his retained professionals, will cause the Sale of the Debtors' Assets to be advertised to ensure the highest and best offer for the Assets. Specifically, the Trustee intends to publish the Sale Notice in the New York Times, National Business section and The Wall Street Journal, National Edition. The Notice of Sale that will be published and sent to potential bidders is annexed to this Motion as **Exhibit "B"**.

29. The Trustee is also in the process of setting up a virtual data room whereby interested parties can review the Debtors' financials and other related documentation as they pertain to the Assets to allow interested parties to perform their due diligence. Any potential bidder

that wants to access the information in the data room will first be required to sign a non-disclosure agreement. The Trustee anticipates the data room will be live by <u>Tuesday, August 7, 2018</u>.

30. The Trustee believes that the proposed marketing is designed to ensure that the highest and best offers for the Debtors' Assets are received.

31. For these reasons, the Trustee, in the exercise of his reasonable business judgment, submits that the Agreement is in the best interests of the Debtors' estates and recommends its approval.

**II.    <u>The Terms of the Sale in the Agreement Should Be Approved</u>**

32. The Sale of the Debtors' Assets is subject to higher and better offers at the Auction. Accordingly, the Trustee will conduct a public auction on **Monday, August 27, 2018 at 11:00 a.m.** at the offices of CBIZ, 5 Bryant Park at 1065 Avenue of the Americas, New York, New York 10018 (the "<u>Auction</u>").

33. On or before the Auction, each Competing Offeror must sign an agreement agreeing to be bound by the terms of the Asset Purchase Agreement and providing the Trustee an initial deposit of $75,000. The Competing Offeror must also demonstrate, to the satisfaction of the Trustee, in his sole discretion, evidence of the Competing Offeror's ability and the financial wherewithal to conclude the transaction on the terms and conditions of this Agreement.

34. In the event a Competing Offer is received that is higher or better than the Initial Bid of $1,500,000 by the Purchaser, the Purchaser shall be permitted, at its option, to submit a higher or better bid. In the event the Purchaser's higher or better bid is accepted by the Trustee, the Agreement will be amended to adjust the Purchase Price accordingly.

35. The Assets will be sold "as is", "where is", without any representations of any kind or nature whatsoever, including as to merchantability or fitness for a particular purpose, and without warranty or agreement as to the condition of such personal property.

36. The Trustee submits that the Sale and its terms are reasonably designed to ensure that the Debtors' estates receive the maximum benefit available from the sale of the Debtors' Assets and therefore warrant Court approval.

### III.   The Debtors' Assets Should Be Sold Free and Clear of Liens

37. Bankruptcy Code § 363 permits the sale of assets to be free and clear of liens, claims and interests of an entity in such property if: (a) applicable state law will permit the sale; (b) such entity consents; (c) the price at which the assets is being sold exceeds the liens, claims and interests; (d) the security interest in the Assets is disputed; or (e) the entity with an interest in the asset being sold could be compelled in a legal or equitable proceeding to accept a money satisfaction of its interest in and to the Debtors' Assets. See 11 U.S.C. § 363(f).

38. Singleton has asserted a first priority security interest in the Assets and has consented to the Sale as reflected in the Agreement. Pursuant to the Agreement, the Debtors' Assets will be sold, in accordance with Bankruptcy Code § 363, free and clear of any and all Liens of whatever kind or nature, with such Liens, if any, to attach to the proceeds of sale in such order and priority as they existed as of the bankruptcy filings.

39. Based on the foregoing, the Trustee believes that he has satisfied the requirements of Bankruptcy Code § 363(f).

**IV.    The Successful Purchaser Should Be Afforded Bankruptcy Code § 363(m) Protection**

40.    Bankruptcy Code § 363(m) affords protection to a good faith purchaser in any interest in property purchased from an estate, whether the sale conducted is later reversed or modified on appeal. Specifically, Bankruptcy Code § 363(m) provides as follows:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). See Allstate Ins. Co. v. Hughes, 174 B.R. 884, 888 (Bankr. S.D.N.Y. 1994) ("Section 363(m) . . . provides that good faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal."); In re Stein & Day, Inc., 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal").

41.    The Second Circuit Court of Appeals has held that a party would have to show fraud or collusion between a buyer and the debtor-in-possession or trustee in order to demonstrate a lack of good faith. See Kabro Assocs. of West Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.), 111 F. 3d 269, 276 (2d Cir. 1997) (citations omitted) ("[t]ypically the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."). See also In re Bakalis, 220 B.R. 525, 537 (Bankr. E.D.N.Y. 1998).

42.    Here, there is not even a trace of collusion between the Trustee and the Purchaser. Further, Singleton may not be the successful purchaser of the Assets, as the Trustee is conducting a public Auction to ensure the highest or best offer for the Assets. The Trustee negotiated an arm's-

13

length transaction and has conducted an independent process. The successful purchaser of the Assets should be afforded good faith purchaser status under Bankruptcy Code § 363(m).

## V.     The Trustee Should Be Granted Related Relief

43.     Pursuant to Bankruptcy Rule 6004(h), all orders authorizing the sale of property pursuant to Bankruptcy Code § 363 are automatically stayed for fourteen (14) days after entry of the order, unless otherwise ordered by the Court. FED. R. BANKR. P. 6004(h). The stay period is intended to provide sufficient time for an objecting party to appeal before the order is implemented. See Advisory Committee Notes to FED. R. BANKR. P. 6004(h).

44.     Given the exigent circumstances surround the Sale as set forth above, the Trustee respectfully requests that the Court waive the 14-day stay period required under Bankruptcy Rule 6004(h). This relief is both necessary and appropriate under the circumstances of this case given the nature of the assets to be sold and the proposed Notice of Sale procedures set forth herein.

45.     Pursuant to the M-383 Order, the Trustee is required to highlight any "extraordinary provisions" in a separate section of a motion seeking to sell estate assets. The Trustee submits that there are no "extraordinary provisions" with respect to the proposed Sale of the Assets that have not otherwise been highlighted herein.

## NOTICE AND NO PRIOR REQUEST

46.     The Trustee will serve this Motion, along with its exhibits, on 21 days' notice (plus three for mailing) of the Sale upon the following parties:

    a. The Debtors, through their counsel;

    b. The United States Trustee;

    c. Entities who have requested notice under Bankruptcy Rule 2002 in the Debtors' jointly administered estates;

    d. All entities known or reasonably believed to have asserted a lien, encumbrance or claim or other interest in the Assets;

14

    e. All creditors listed on the petitions and schedules of the Debtors' jointly administered estates;

    f. All affected federal, state and local regulatory and taxing authorities, including the Internal Revenue Service;

    g. All entities known or reasonably believed to have expressed an interest in the Assets.

47. No previous request for the relief sought herein has been made by the Trustee to this or any other Court.

**WHEREFORE** the Trustee respectfully requests that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: August 2, 2018
      Wantagh, New York

**LaMONICA HERBST & MANISCALCO, LLP**
Counsel to Salvatore LaMonica, Chapter 7 Trustee

By: *s/ Jacqulyn S. Loftin*
Jacqulyn S. Loftin, Esq.
Partner
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: 516.826.6500

*M:\Documents\Company\Cases\Interview, Inc\Sale of Assets\Sale Mtn.docx*

15