## **ASSET PURCHASE AGREEMENT**

AGREEMENT made as of this 3rd day of August, 2018 by and between Salvatore LaMonica, the Chapter 7 Trustee (the "Trustee") of the jointly administered estates of Interview, Inc. ("Interview"), Brant Publications, Inc. ("BPI"), and BMP Medial Holdings, LLC ("BMP", along with Brant and Interview are referred to collectively as the "Debtors") having an address at c/o LaMonica, Herbst & Maniscalco, LLP, Attn: Jacqulyn S. Loftin, Esq., 3305 Jerusalem Avenue, Suite 201, Wantagh, New York 11793 and Singleton, LLC (the "Purchaser", along with the Trustee are referred to collectively as the "Parties") having an address at Baker Botts L.L.P., Attn: John H. Bae, Esq., 30 Rockefeller Plaza, New York, New York 10112.

WHEREAS, on May 21, 2018 ("Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court, Southern District of New York (the "Court").

WHEREAS, Salvatore LaMonica was appointed as the interim Chapter 7 Trustee of the Debtors' estates, and subsequently was duly qualified as the permanent Trustee of these estates.

WHEREAS, BPI has a 100% membership interest in BMP and Interview is an indirect wholly owned subsidiary of BPI. Interview is an American "pop culture" magazine that was founded in late 1969 by artist Andy Warhol and a journalist by the name of Jon Wilcock.

WHEREAS, the Purchaser desires to purchase the Debtors' personal property and general intangibles listed on Schedule "A" annexed hereto (collectively, the "Assets") from the Trustee, who desires to sell the Assets in accordance with the terms, covenants and conditions set forth in this Agreement subject to and contingent upon entry of an appropriate Order of the Court under the jointly administered Debtors' estates Case No. 18-11514 (MKV) that authorizes the Trustee to sell the Assets free and clear of all liens, claims, interests and encumbrances of whatever kind or nature (collectively, the "Liens") with any such Liens to attach to the proceeds of the sale in order of priority of such Liens. The Assets listed on Schedule "A" are an all-inclusive list of the assets being sold under the terms of the Agreement. For clarification, the Trustee is not selling any other assets in the Debtors' estates.

NOW, THEREFORE, in consideration of the terms, covenants and conditions as hereinafter set forth, the parties agree as follows:

1. Agreement to Sell and Purchase.
    (a) Trustee agrees to sell, convey and assign all of the Debtors' rights, titles and interest in and to the Assets to the Purchaser and the Purchaser agrees to purchase, accept and assume such bill of sale no later than five (5) days following the date of the entry of the Approval Order (defined below) (the "Closing Date").

    (b) Time is of the essence for the Parties to perform all of their obligations required under this Agreement by the Closing Date, which must occur on or before August 31, 2018, or such other date as may be authorized by the Court.

(c) Notwithstanding any provision of this Agreement or any other document or instrument to the contrary, Purchaser shall not have any obligation with respect to any liabilities of the Trustee, regardless of whether the Trustee's obligation with respect to such liabilities arises before, on or after the Closing Date.

2. Amount and Manner of Payment of the Purchase Price
   (a) The Purchaser agrees to pay $1,500,000 to the Trustee for the acquisition of the Assets (the "Purchase Price"), or such other amount equal to the winning bid if the Purchaser is the winning bidder at the Auction, defined in 3(a) below. The Purchaser will pay the Purchase Price to the Trustee as follows: $75,000 (the "Deposit") within five (5) business days on signing of this Agreement, by certified or official check payable to "Salvatore LaMonica, Chapter 7 Trustee" to be deposited into a separate segregated Trustee account in the Interview estate pursuant to the terms and conditions herein; and the sum of $1,425,000, the difference between the Purchase Price and the Deposit, plus any applicable sale or transfer taxes, in full on the Closing Date. The Purchaser will pay the Balance to "Salvatore LaMonica, Chapter 7 Trustee" by wire or unendorsed certified or official bank check drawn on a bank or trust company that is a member of the Federal Reserve System.

   (b) If the Trustee is unable to obtain the Approval Order (defined below) or is otherwise unable to perform his obligations under this Agreement, the Trustee or the Purchaser has the right to cancel this Agreement and, if the Purchaser is not then in default hereunder, the Trustee will refund the Deposit to the Purchaser. Upon such refund, this Agreement will wholly cease and terminate and neither party will have any further claim against the other under this Agreement except as to those provisions that, by their express terms, survive termination. The Purchaser's exclusive remedy for the Trustee's inability to obtain the Approval Order (defined below) or to perform his obligation is to terminate this Agreement. The liability of the Trustee and the estates shall in no event exceed the Deposit, and upon refunding the Deposit, his and the estates' liability shall cease.

3. Bankruptcy Court Approval.
   (a) Trustee's obligation under this Agreement are entirely subject to, and contingent upon the entry of an Order of the Court that: (i) authorizes and approves the transaction embodied in this Agreement; (ii) authorizes the Trustee to proceed with the transaction as contemplated by this Agreement; and (iii) provides that the sale of the Assets to the Purchaser will be free and clear of all Liens with any such Liens to attach to the proceeds of the sale in the order of priority of such Liens; and (iv) contains a finding that the Purchaser is a good faith purchaser entitled to all of the protections under Bankruptcy Code § 363(m) (the "Approval Order"), which the Trustee will seek at the hearing scheduled for Tuesday, August 28, 2018 at 10:00 at the Court.

   (b) This sale to the Purchaser under the terms of the Agreement is subject to higher or better offers. Therefore, the Trustee shall conduct a public auction on **Monday, August 27, 2018 at 11:00 a.m.** at the offices of CBIZ Corporate Recovery Services, 5 Bryant Park, New York, New York 10018 (the "Auction"). At the Auction, a competing offer (the

"Competing Offer") must satisfy the following terms and conditions in order to participate in the Auction: (i) the Competing Offer must provide for an all cash purchase price that is higher than the Purchase Price (the "Initial Bid"); (ii) the Competing Offer must be substantially similar to the terms and conditions of this Agreement, subject to such modification that does not materially reduce the value of such bid to the Debtors' estates as within the sole discretion of the Trustee; (iii) a bidder submitting a Competing Offer (the "Competing Offeror") must sign an agreement agreeing to be bound by the terms and conditions of this Agreement; (iv) the Competing Offeror must demonstrate, to the satisfaction of the *Trustee, in his sole discretion, evidence of its ability and the financial wherewithal to conclude the transaction on the terms and conditions* of this Agreement, without material delay; (v) the Competing Offeror must provide, at or before the Auction, a certified check made payable to "Salvatore LaMonica, as Chapter 7 Trustee" in the amount of $75,000 as an initial deposit; (vi) the Competing Offer shall not be conditioned upon the outcome of unperformed due diligence by the Competing Offeror with respect to the Assets

(c) The Trustee will take all appropriate steps to market the Assets, and set up a data room on or before August 7, 2018 containing information relating to the Assets for potential bidders.

(d) In the event a Competing Offer is received that is higher or better than the Initial Bid, the Purchaser shall be permitted, at its option, to submit a higher or better bid. In the event the Purchaser's higher or better bid is accepted by the Trustee, this Agreement will be amended to adjust the Purchase Price accordingly.

(e) Trustee's obligations under this Agreement are conditioned upon Trustee not receiving, after notice and hearing (including, at the Auction), a Competing Offer that is a higher or better offer than any subsequent bid submitted by the Purchaser and is approved by the Court. If such a higher and better offer is accepted by the Trustee, and approved by the Court, (i) this Agreement will be null and void and Trustee will return the Deposit to the Purchaser promptly after such approval by the Court; and (ii) after Trustee returns the Deposit to the Purchaser, neither Party will have any further rights or obligations hereunder, except obligations under this Agreement that, by their express terms, survive the termination of this Agreement.

(f) If the Purchaser is not the approved as the successful bidder at the Auction and does not acquire the Assets, then this Agreement will be deemed canceled, in which event, (i) this Agreement will be null and void; and (ii) the Trustee will return the Deposit to the Purchaser.

4. Conditions of Sale
  (a) The Purchaser's obligations hereunder are not conditioned or contingent upon the Purchaser obtaining financing from any source.

  (b) Except to the extent that a representation is made specifically elsewhere in this Agreement, Trustee has not made and does not make any representations as to the physical condition, rents, leases, expenses, operations, value of Assets, or any other matter or thing affecting or related to the Assets, if any, of this transaction, which might be pertinent to the purchase of the Assets or the execution of this Agreement. Trustee is not liable or bound in any manner by expressed or implied warranties, guaranties,

    promises, statements, representations or information pertaining to the Assets, made or furnished by any agent, employee, servant or other person representing or purporting to represent Trustee unless such warranties, guaranties, promises, statements, representations or information are expressly and specifically set forth herein. All understandings and agreements heretofore had between the Parties are merged in this Agreement, which alone fully and completely expresses their agreement.

  (c) The Purchaser has performed its due diligence in and to the Assets, covenants and agrees to accept ownership by bill of sale to the Assets "as is", "where is" condition on the date of this Agreement, subject to normal or reasonable use, wear and tear and deterioration through Closing, and the Trustee is not obligated to make any repairs, alterations, improvements or additions thereto whatsoever.

  (d) The sale is being made in accordance with the provisions of Bankruptcy Code § 363 with the Assets to be sold free and clear of all Liens with Liens to attach to the net proceeds of the Purchase Price, in the order of priority of such Liens.

5. <u>Disposition of the Deposit</u>. The Deposit will be held and disbursed as follows: (a) if the Closing takes place, the Deposit will be retained by the Trustee,; (b) if this Agreement is terminated in accordance with its terms, the Deposit will be paid to, or upon the instructions of, the party entitled thereto in accordance with the provisions of this Agreement; or (c) if the Closing does not take place by reason of the failure of a party to comply with such party's obligations hereunder, the Deposit will be paid to the party entitled thereto in accordance with the provisions of this Agreement.

6. <u>The Closing</u>.
   (a) The bill of sale and other closing documents (if necessary) will be delivered upon the receipt of the Purchase Price at the office of LaMonica Herbst Maniscalco, LLP, 3305 Jerusalem Avenue, Suite 201, Wantagh, New York 11793-2028 at 10:00 a.m. on the Closing Date, with such delivery of the bill of sale and receipt sometimes referred to herein as the "Closing". Subject to paragraph 1 above, time is of the essence with respect to the Purchaser's obligations to pay the Purchase Price, and to accept the bill of sale on the Closing Date, and the Trustee's obligations to deliver the bill of sale, or such later day to which the Closing may be adjourned by Trustee.

   (b) Trustee will have the right to adjourn the Closing one or more times in order to perform his obligations under this Agreement. Such right to adjourn will be exercised by notice of exercise given by the respective party in accordance with the provisions of this Agreement governing the giving of notice, provided that notice of exercise may be given orally if exercise is made at the date, time and place then scheduled for Closing and confirmed by the transmission of written notice on such date in accordance with such provisions.

   (c) At Closing, the Purchaser will deliver: (i) the Purchase Price; (ii) such documents reasonably necessary to demonstrate that the transactions contemplated by this Agreement have been duly authorized by all necessary organizational action of the Purchaser; and (iii) any such other documents necessary to effectuate this Agreement and the Closing on the sale of the Assets.

   (d) At Closing, Trustee will deliver to the Purchaser the following items (all duly executed and acknowledged where required): (i) a duly executed and acknowledged bill of sale

      in a form reasonably acceptable to Purchaser; (ii) the Approval Order; and (iii) any such other documents necessary or reasonably requested by Purchaser to effectuate this Agreement and the Closing on the sale of the Assets.

7. <u>The Purchaser's Default/Damages</u>. If the Purchaser fails or refuses to comply with and perform all of the terms, provisions, conditions, agreements, and obligations on the Purchaser's part to be observed, kept and performed pursuant to this Agreement for any reason other than (a) the absence of an event or state of facts which conditions the Purchaser's obligation to close hereunder or (b) the material breach of any representation or warranty made by the Trustee, if any, herein, the Trustee, on behalf of the Debtors' estates, will retain the Deposit as liquidated damages for such failure or refusal of the Purchaser to consummate this transaction or for any noncompliance, nonperformance, breach or default by the Purchaser, including, without limitation, for the Trustee's loss of its bargain as embodied herein. The parties agree that the Deposit represents a reasonable measure of the amount of damages that would be sustained by the Trustee in the event of the Purchaser's default.

8. <u>Notices</u>. Any notice or demand required by, or desired to be sent under, this Agreement must be in writing and must be sent to the party at its address set forth in the preamble by mailing the same by express mail, or delivery by Federal Express or by other nationally recognized overnight courier using a written receipt or other valid written proof of delivery, or by hand delivery using a written receipt. The attorneys for the Parties may give notices or demands on behalf of their respective clients. Either Party may designate by written notice, in writing, a new or other address to which notices or demands are thereafter to be sent. Copies of all notices will be sent as follows:

    If to Trustee, a copy will be sent to:

    LaMonica Herbst Maniscalco, LLP 3305
    Jerusalem Avenue, Suite 201 Wantagh, New
    York 11793-2028
    Attn: Jacqulyn S. Loftin, Esq.

    If to the Purchaser, a copy will be sent to:
    Baker Botts LLP
    30 Rockefeller Plaza
    New York New York 10112
    Attn: John H. Bae, Esq.

    with a copy to:

    Peter Brant
    80 Field Point Road
    Greenwich, CT  06830

9. <u>Trustee's Representations and Warranties</u>.
    (a) The Trustee makes the following representations and warranties to the Purchaser in connection with the Assets to the Trustee's actual knowledge:

   (1) Subject to the entry of the Approval Order, Trustee has the legal power, right and authority to enter into this Agreement and to consummate the transaction contemplated hereby.

   (2) Except for the Purchaser's rights hereunder, no person, firm or entity, has any rights to acquire the Assets or any part thereof.

 (b) The foregoing representations will survive the Closing.

10. The Purchaser's Representations and Warranties.
    (a) The Purchaser has the legal power, right and authority to enter into this Agreement and to consummate the transactions contemplated hereby. The individual executing this Agreement on behalf of the Purchaser has the legal power, right, and actual authority to bind the Purchaser to the terms and conditions of this Agreement.

    (b) As of the date hereof, all necessary action has been taken by the Purchaser in connection with the entering into this Agreement and the consummation of the transactions contemplated hereby.

    (c) This Agreement and all documents required hereby to be executed by the Purchaser are and will be valid, legally binding obligations of and enforceable against the Purchaser in accordance with their terms.

    (d) The Purchaser has the financial wherewithal to consummate this transaction contemplated by this Agreement in accordance with its terms.

11. Limitation on Trustee's Liability
    (a) If the Trustee is unable to convey title to the Assets in accordance with the provisions of this Agreement for any reason whatsoever, the Trustee's sole obligation and liability hereunder will be to cause the Deposit to be refunded to the Purchaser, and thereupon all rights and obligations hereunder, by either party against the other will cease and terminate, except to the extent that this Agreement provides for their survival after termination, and this Agreement will be null and void and the lien, if any, of the Purchaser against the Assets will wholly cease. The Trustee will not be required to bring any action or proceeding or otherwise to incur any expense to render the title to the Assets insurable, without reduction of, or credit or allowance against the Purchase Price and without any liability on the part of the Trustee, may accept such title as the Trustee is able to convey. If there is any conflict between the provisions of this subparagraph and any other provision of this Agreement, then the provisions of this subparagraph will govern and predominate.

    (b) The Purchaser waives any right it may have to bring an action against Trustee, its remedies being limited to cancellation. The Purchaser expressly waives the right to take any action that would adversely affect the Trustee's ability to convey title to the Assets free and clear of any claim of the Purchaser. This Agreement is "non-recourse" as to the Trustee and the Debtors' estates. The Purchaser agrees to look solely to the sums paid

      by the Purchaser toward the Purchase Price for the satisfaction of the Purchaser's remedies for the collection of a judgment (or judicial process) requiring the payment of money by the Trustee in the event of any default or breach by the Trustee with respect to any of the terms, covenants and conditions of this Agreement to be observed and/or performed by the Trustee. The provisions of this section will survive the Closing or other termination of this Agreement.

12. <u>Successors and Assigns</u>. This Agreement will be binding upon, and will inure to the benefit of, the respective Parties and their successors and permitted assigns. The Purchaser's rights under this Agreement may not be assigned without the prior written consent of Trustee in each instance (which Trustee may grant or withhold in Trustee's sole and absolute discretion) and any assignment or attempted or purported assignment made without such consent will be null and void and of no force or effect and will constitute a non-curable default by the Purchaser, subject to the provisions of Section 7 of this Agreement. The Purchaser may however assign its rights under this Agreement, immediately before the Closing, simultaneously with the payment of the Purchase Price to the Trustee, to any entity owned and controlled by the Purchaser, or by the parties holding a 51% percent in the Purchaser and the power to control its management, upon appropriate proof of same delivered to Trustee. No such permitted assignment will relieve the Purchaser of any of its obligations under this Agreement. For the avoidance of doubt, following the Closing, the Purchaser shall be entitled to transfer or assign to any third party or otherwise dispose of the Assets as it desires in its sole and absolute discretion.

13. <u>No Lien</u>. No lien or encumbrance will arise against the Assets in favor of the Purchaser from this Agreement or any monies deposited hereunder.

14. <u>Entire Agreement: Construction</u>. This instrument constitutes the entire agreement between the Parties and there are no other covenants, promises or agreement, written or oral, and no agent of either party has the authority to make representations or other agreements, verbal or written which modify or vary the terms or conditions of this Agreement. This Agreement supersedes and cancels any and all negotiations, arrangements, agreement and understandings, if any, between the parties hereto. This Agreement will be deemed to have been jointly drafted by the attorneys for both Parties and will be construed neither for nor against the Trustee or the Purchaser. The singular will include the plural, and vice versa, and masculine, feminine and neutral pronouns will be fully interchangeable, where the context so requires. References to "hereof" or "hereunder" set forth in this Agreement will refer to this entire Agreement and not to the section or subsection in which they appear unless there is no reasonable construction to that effect.

15. <u>Modification</u>. This Agreement may not be changed or terminated orally. The provisions hereof will apply to and bind the heirs, executors, administrators, successors and permitted assigns of the respective parties.

16. <u>Enforceability</u>. If any provision of this Agreement is determined to be unenforceable or

invalid, such invalidity or unenforceability will not affect the remaining provisions of this Agreement, as the provisions of this Agreement are intended to be and will be severable. It is the intention of the parties that if any provision of this Agreement is capable of two constructions, one of which would render the provision void and the other of which would render the provision valid, then the provision will have the meaning that renders it valid.

17. <u>Severability</u>. If any provision of this Agreement is found to be void or unenforceable by a court of competent jurisdiction, the remaining provisions will nevertheless be binding upon the parties with the same force and effect as though the void or unenforceable part had been severed and deleted.

18. <u>Waiver</u>. Any failure by Trustee to insist upon strict performance by the Purchaser of any of the provisions of this Agreement will not be deemed a waiver of any of the provisions of this Agreement, despite the number of violations or breaches that may occur, and Trustee, notwithstanding any such failure, will have the right thereafter to insist upon strict performance by the Purchaser of any and all of the provisions of this Agreement to be performed by the Purchaser.

19. <u>Binding Effect</u>. Trustee's delivery of this Agreement for inspection by the Purchaser is not an offer and does not create any rights in favor of the Purchaser or others or create any obligation upon Trustee. This Agreement will have no force or effect unless and until it has been fully executed, delivered, and exchanged, and approved by the Court.

20. <u>Construction</u>. The provisions of this Agreement will be governed by and construed and enforced according to, the laws of the State of New York applicable to agreements made and to be performed wholly therein and applicable federal law. The parties hereby consent to the jurisdiction of the courts of the State of New York. Any action or proceeding arising out of this Agreement will be brought exclusively in the United States Bankruptcy Court for the Eastern District of New York. This Agreement will be construed and interpreted without regard to any presumption or other rule requiring construction or interpretation against the party causing this Agreement to be drafted.

21. <u>Governing Law; Waiver of Jury Trial.</u>  **This Agreement shall be governed by and construed in accordance with the domestic laws of the State of New York without giving effect to any choice or conflict of law provision or rule (whether of the State of New York or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of New York.**  Except as prohibited by law, the parties waive trial by jury in any litigation arising out of, or connected with, or relating to, this Agreement or the relationship created hereby. With respect to any matter for which a jury trial cannot be waived, the parties agree not to assert any such matter as a counterclaim in, nor move to consolidate such claim with, any action or proceeding in which a jury trial is waived.

22. <u>Submission to Jurisdiction; Consent to Service of Process.</u>  Without limiting any Party's right to appeal any order of the Court, (a) the Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any Claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the Sale, and (b) any and all proceedings related to the foregoing shall be filed and maintained only in the Court, and the Parties hereby consent to and submit to the jurisdiction and venue of the Court and shall receive notices as indicated in Section 8 hereof.  The Parties

hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each of the Parties agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. Each of the Parties hereby consent to process being served by any Party to this Agreement in any suit, action or proceeding by delivery of a copy thereof in accordance with the provisions of Section 8.

23. Survival. No provision of this Agreement will survive the closing, except those obligations expressly stated therein to survive or to be performed subsequent to the Closing Date.

24. Counterpart Execution. This Agreement will not be binding unless a fully executed counterpart has been delivered to each of the parties. This Agreement may be executed in counterparts. This Agreement is subject to Court approval.

25. Section Headings. The section headings used herein are for convenience of reference only and will not limit or define the provisions of this Agreement.

IN WITNESS WHEREOF, the parties have signed this Agreement on the date first above written:

*s/ Salvatore LaMonica*
Salvatore LaMonica, Chapter 7 Trustee of
the Debtors' Estates

*s/ Peter Brant*
Title: Manager
Purchaser: Singleton, LLC

## Schedule "A"

All tangible and intangible assets of the Interview Estate necessary to operate its business, including:

a: All trademarks, logos, and intellectual property owned by the Debtors (as defined in the Agreement);
b: All social channels and accounts belonging to or used by the Debtors (website, Instagram, Facebook and Twitter);
c: All archives of Interview, Inc.;
d: All office equipment and computers of Interview;
e: The contract at the warehouse where the Interview archives are kept;
f: All items relating to Interview's business, including subscriber lists.